UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELVIN N. PRIDEMORE, individually and on behalf of others similarly situated, Plaintiff, | ) ) ) ) | |
| vs. | ) | 2:07-cv-0249-LJM-WGH |
| JIFFY MINI-MARTS, INC., Defendant. | ) ) ) ) | |

## ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This matter is before the Court on Plaintiff's, Melvin N. Pridemore ("Pridemore"), and opt-in Plaintiffs', Lillian Gillie ("Gillie"), Danny M. Gobin ("Gobin"), and James Norton ("Norton") (collectively "Plaintiffs"), Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Pridemore initiated this action against Jiffy Mini-Marts, Inc. ("Jiffy"), pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), alleging minimum wage and overtime pay violations. Pridemore also asserted state law wage claims under various Indiana statutes. On May 1, 2008, the Court granted Pridemore's Motion to Certify Collective Action Status pursuant to § 216(b). Only Gillie, Gobin, and Norton opted in to Pridemore's collective action.

Plaintiffs request certification under Rule 23 for their state law claims and therefore seek to maintain both a collective action under § 216(b) and a class action under Rule 23. According to Plaintiffs, "[s]uch a hybrid action is particularly appropriate when plaintiffs' state law wage claims unquestionably form part of the same case or controversy as the FLSA claims." Pls.' Br. at 2. In their briefs, the parties argue over whether the proposed

classes satisfy Rule 23, but not over what the Court considers the most critical issue: whether the Court, in a collective action under the FLSA, should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over a Rule 23 class action based upon state law wage claims.  For the reasons discussed herein, Plaintiffs' Motion for Class Certification is **DENIED**.[1]

## I. BACKGROUND

Jiffy operates convenience stores and gas stations primarily in Terre Haute, Indiana. Pridemore Aff. ¶ 2.  Pridemore worked for Jiffy as a manager and assistant manager from approximately June 2004 until May 4, 2007.  *Id.* ¶ 3.  Gillie worked for Jiffy as a cashier and assistant manager from October 30, 2003, until April 3, 2007.  Gillie Aff. ¶ 3.  Gobin worked for Jiffy as a cashier from approximately March 2005 to May 2006.  Govin Aff. ¶ 3.  Norton worked for Jiffy as an assistant manager from December 28, 2007, until February 23, 2008.  Norton Aff. ¶ 3.

According to Plaintiffs, as a matter of practice and policy, Jiffy docked the wages of its employees if: (1) a customer pumped gas but did not pay for the gas ("pump and run") during the employee's shift; (2) the cash register did not balance during the employee's shift; or (3) customers stole merchandise during the employee's shift.  Pridemore Aff. ¶ 4; Gillie Aff. ¶ 4; Norton Aff. ¶ 4; Gobin Aff. ¶ 4.  Jiffy docked Plaintiffs' pay for these reasons. Pridemore Aff. ¶¶ 6-7; Gillie Aff. ¶¶ 6-7; Norton Aff. ¶¶ 6-7; Gobin Aff. ¶¶ 6-7.

Jiffy charged its employees for any food or other items from the store that the

---

[1] As a result of this Order, Plaintiffs' Motion for Approval of Proposed Class Action Notice is **DENIED AS MOOT**.

employee used while at work. Pridemore Aff. ¶ 5. Jiffy deducted these amounts from its employees' pay, typically in ten dollar increments. *Id.* Jiffy gave each employee a receipt for the price of the food and items. *Id*. When Jiffy docked an employee's wages – either due to the employee's personal consumption or pursuant to Jiffy's wage docking policy – Jiffy recorded a "cash advance" entry on that employee's receipt. *Id.*

## II.  STANDARDS

In order for the Court to hear Plaintiffs' state law claims, they must satisfy 28 U.S.C. § 1367, which provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Therefore, the Court has jurisdiction over Plaintiffs' state law claims as long as they "derive from a common nucleus of operative fact" with Plaintiffs' FLSA claim. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir.1999) (quoting *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997)) (stating that the "common nucleus of operative fact" standard was codified in the statute's grant of supplemental jurisdiction over claims "so related to [the federal] claims . . . that they form part of the same case or controversy"). However, according to § 1367(c), the Court may decline to exercise supplemental jurisdiction under § 1367(a) if

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

 (3) the district court has dismissed all claims over which it has original jurisdiction, or

 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4). In considering these factors, the Court shall "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *Groce*, 193 F.3d at 501 (quoting *City of Chicago*, 522 U.S. at 173). Moreover, where "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726.

### III. DISCUSSION

Under § 216(b), also referred to as the Portal-to-Portal Act, an FLSA action for overtime pay may be maintained by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute contains an express opt-in provision: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* "The difference between a Rule 23 class action and a § 216(b) class action is thus that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound." *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982).

First, the Court concludes that Plaintiffs' state law claims "derive from a common nucleus of operative fact" with Plaintiffs' FLSA claims. *Groce*, 193 F.3d at 500 (quoting

4

*City of Chicago*, 522 U.S. at 164-65). Both the FLSA claims and state law claims revolve around the legality of Jiffy's standard wage docking policy. However, the Seventh Circuit has not considered whether, and under what circumstances, a district court should entertain a Rule 23 class action of state law claims pursuant to § 1367(a) when the federal claim under which supplemental jurisdiction arises is an FLSA collective action pursuant to § 216(b).

The Third Circuit considered the issue in *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 312 (3rd Cir. 2003), in which the court held that the district court abused its discretion when it granted the plaintiffs' motion to certify a state law wage claim when the district court had already certified a collective action under § 216(b). First, the court noted that Congress enacted § 216(b) in direct response to the Supreme Court's decision in *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946), in which the Supreme Court expanded the scope of compensable "working time" for FLSA purposes. *Id.* at 306. The *Anderson* decision led to a dramatic increase in so-called "portal-to-portal" lawsuits. *Id*. The *De Asencio* court noted that in responding to the increase in litigation, "Congress sought 'to define and limit the jurisdiction of the courts' through the Portal-to-Portal Act." *Id.* (quoting Pub.L. No. 80-49, ch. 52, § 1(b)(3), 61 Stat. 85 (1947), 93 Cong. Rec. 2,087 (1947)). Therefore, Congress changed the collective action to an opt-in system – where potential class members must affirmatively opt-in to be bound by the litigation – in order to decrease FLSA litigation in the courts. *Id.*

Next, with that background in mind, the *De Asencio* court offered multiple reasons why the district court abused its discretion when it exercised supplemental jurisdiction over

5

the plaintiffs' class action under Pennsylvania law.  The court held that the class action law suit raised novel questions of state law, namely whether an employee could establish an implied oral contract to support a claim under Pennsylvania's wage laws.  *Id.* at 309-10.  Pennsylvania courts had not yet decided that issue.  *Id.*  The *De Asencio* court also noted that, while it was deciding the case on different grounds, the "differences in the comprehensiveness of the federal and state remedies . . . further support a finding of substantial predomination by the [state law] claims under *Gibbs*[.]"  *Id.* at 309 n.13.

Moreover, the Third Circuit reasoned that "[a]nother countervailing interest in relegating the [state law] claims here to state court is Congress' express preference for opt-in actions for the federal cause of action."  *Id.* at 310.  The Court acknowledged the disparity in numbers between the opt-in class, 447 members, and the opt-out class, 4,100 members, and stated:

> Generally, the distinction between opt-in and opt-out classes is crucial.  Under most circumstances, the opt-out class will be greater in number, perhaps even exponentially greater. . . .  The aggregation of claims, particularly as class actions, profoundly affects the substantive rights of the parties to the litigation.  Notably, aggregation affects the dynamics for discovery, trial, negotiation, and settlement, and can bring hydraulic pressure to bear on defendants.  The more aggregation, the greater the effect on the litigation.

*Id.* at 310 (citations omitted).  Finally, the court concluded that although the predomination analysis under § 1367(c) typically focuses on the type of claim and not the number of parties involved, "the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog."  *Id.* at 311.

6

Ultimately, the Third Circuit held that the district court abused its discretion when it exercised supplemental jurisdiction over the plaintiffs' state law class action because of the inordinate size of the state law class, the different terms of proof required by the implied contract state law claim, and the general federal interest in opt-in wage actions. *Id.* at 312. According to the *De Asencio* court, the federal action was merely an appendage to the more comprehensive state action. *Id.*

Here, the Court agrees with the Third Circuit's analysis and concludes that Plaintiffs' class action would substantially predominate over their FLSA collective action. First, the collective action class contains only four members: Pridemore, Gillie, Gobin, and Norton. Conversely, the proposed Rule 23 class could total between 700 and 800 members. Pls.' Br. at 7 n.4. Although that number is merely an estimate by the parties, "[u]nder most circumstances, the opt-out class will be greater in number, perhaps even exponentially greater." *De Asencio*, 342 F.3d at 310. As the Third Circuit observed, the aggregation of claims profoundly affects the substantive rights of the parties to the litigation. *Id.* Here, Plaintiffs want to add over 700 state law plaintiffs to their four-plaintiff FLSA collective action, but Congress sought to avoid extensive litigation when it implemented the opt-in system. *Id.* at 306.

Aside from the huge disparity in numbers, the determination of the damages will entail a highly detailed analysis of each class member's payroll records. When Jiffy charged its employees for any food or other items from the store that the employee used while at work, Jiffy recorded these purchases as "cash advances" on the employees' receipt. Pridemore Aff. ¶ 5. Jiffy used the same language to record deductions related to

its wage docking program. *Id.* ¶ 5. Consequently, to determine which "cash advances" related to Jiffy's wage docking policy for liability on the state law claims, the parties will have to sift through between 700 and 800 employees' payroll records. However, for the federal law claim, the parties will only have to analyze four employees' payroll records. As a result, the state law class action would substantially predominate the FLSA collective action. *See De Asencio*, 342 F.3d at 309 n.13.

The Court notes that the *De Asencio* court relied in part on its conclusion that the plaintiffs' state law claims raised novel issues of state law. *Id.* at 309-10. However, the Court does not believe that conclusion controls the present case. Here, Plaintiffs' proposed class contains an inordinate number of potential members when compared to its small FLSA class. As the *De Asencio* court stated, "the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog." *Id.* at 311. Further, the determination of damages will have a substantial effect on this litigation. Taken together, these two conclusions more than support the Court's view that Plaintiffs' state law class action would substantially predominate over their FLSA class action.

Finally, denying Plaintiffs' Motion complies with the purpose of § 216(b). *Id.* at 306. Congress sought to limit litigation under FLSA with an opt-in class system. *Id.* at 306. To allow Plaintiffs to assert an opt-out state-law claim, specifically with the disparity in numbers between the state law class and the FLSA class, would undermine the purpose behind § 216(b)'s requirement that "No employee shall be a party plaintiff to [an FLSA

collective action] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b); *De Asencio*, 342 F3d at 306.

The Court concludes that Plaintiffs' state law class action would substantially predominate Plaintiffs' FLSA collective action because of the disparity in numbers between the respective classes and the difficultly in determining damages. Moreover, this outcome furthers Congress' intent to decrease extensive litigation under the § 216(b) of the FLSA.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs', Melvin N. Pridemore, Lillian Gillie, Danny M. Gobin, and James Norton, Motion to Certify Class pursuant to Rule 23 of the Federal Rules of Civil Procedure is **DENIED**. Plaintiffs' Motion for Approval of Proposed Class Action Notice is **DENIED AS MOOT**.

IT IS SO ORDERED this 24th day of November, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Robert Peter Kondras Jr.
Hunt Hassler & Lorenz LLP
kondras@huntlawfirm.net

Scott Craig
COX ZWERNER GAMBILL & SULLIVAN
scraig@coxlaw.net

David P. Friedrich
WILKINSON GOELLER MODESITT WILKINSON
AND DRUMMY
dpfriedrich@wilkinsonlaw.com